UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:20-CR-0378-B |
| | § | |
| AARON OEHLSCHLAGER, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Aaron Oehlschlager ("Defendant" or "Mr. Oehlschlager")'s Motion to Suppress (Doc. 80). As stated on the record at the motion hearing and for the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the motion, and **ORDERS** that Mr. Oehlschlager's interview statements after 30:56 on the interview recording shall be suppressed.

## I.

## BACKGROUND

Mr. Oehlschlager initially was charged by criminal complaint with carjacking in violation of 18 U.S.C. § 2119. Doc. 1, Compl., 1.[1] A warrant for his arrest issued on July 24, 2020, Doc. 2, Arrest Warrant, and he was arrested by federal agents on July 29, 2020. Doc. 80, Mot. Suppress, 1. On February 22, 2022, Mr. Oehlschlager filed a motion to suppress incriminating statements made during a custodial interview conducted immediately following his arrest. Doc. 80, Mot. Suppress. The

---

[1] Mr. Oehlschlager was subsequently charged by superseding indictment with using, carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and with possession of a falsely made, forged, counterfeited, mutilated, or altered seal of a Department or Agency of the United States with fraudulent intent in violation of 18 U.S.C. § 506(a)(3). Doc. 110, Superseding Indict.

- 1 -

roughly two-hour interview was conducted by two case agents, Special Agent Taylor Page and Detective Mike Deevers ("SA Page", "Detective Deevers", and collectively "agents"). *Id.* at 1. At the beginning of the interview, SA Page administered a *Miranda* warning and Mr. Oehlschlager knowingly and voluntarily consented to speak with the agents. SA Page also told Mr. Oehlschlager that he could invoke his right to counsel or stop the interview at any time. Mr. Oehlschlager claims he invoked his right to counsel six or seven times during the interview and that all his statements from the interview should be suppressed.[2] *Id.* at 2–3. According to the Government, only Mr. Oehlschlager's final attempted invocation triggered his right to counsel, after which the agents ceased the interrogation, so none of Mr. Oehlschlager's interview statements should be suppressed. Doc. 82, Gov't's Resp., 11.

On May 9, 2022, the Court heard evidence on the motion. The Court has also viewed the full interview recording. At the close of the motion hearing, the Court granted in part the motion and ordered Mr. Oehlschlager's interview statements after 30:56 on the interview recording suppressed. The Court explains its reasoning below.

## II.

## LEGAL STANDARD

The Supreme Court's decision in *Miranda v. Arizona* "declared that an accused has a Fifth . . . Amendment right to have counsel present during custodial interrogation." *Edwards v. Arizona*,

---

[2] Defendant's briefing on the motion asserts that he made six separate statements invoking his right to counsel, Doc. 80, Mot. Suppress, 2. At the motion hearing, Defendant asserted that he made seven such statements. By the Government's count, Mr. Oehlschlager made six statements, but the Government did not dispute the claim of seven statements. The Court finds that Mr. Oehlschlager's third request for an attorney—which the Government and Mr. Oehlschlager agree was his third statement—invoked his right to counsel, *see* Doc. 80, Mot. Suppress, 2; Doc. 82, Gov't Resp., 8–9, so the total count of his statements does not affect the Court's analysis.

451 U.S. 477, 482 (1981). "It is black letter law that when a suspect who is subject to custodial interrogation exercises his [*Miranda*] right to counsel, law enforcement officers must cease questioning until counsel is made available to him, unless the accused himself initiates further communication, exchanges or conversations with the officers." *United States v. Montes*, 602 F.3d 381, 385 (5th Cir. 2010) (citing *Edwards,* 451 U.S. at 485–86). "Generally, an invocation by a suspect of his right to counsel that is ignored by law enforcement officers requires that the suspect's statements made after the request be excluded by the trial court." *Id.* "If a suspect, however, makes an ambiguous or equivocal reference to an attorney there is no requirement that law enforcement cease questioning." *Id.* (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). "Further, the investigator conducting the questioning has no obligation to attempt to clarify the ambiguous comment of the accused." *Id.* "Thus, 'law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.'" *Id.* (quoting *Davis*, 512 U.S. at 461).

"[D]eciding whether a statement is an unambiguous request for counsel focuses only on the statement in question and, possibly, conduct that precedes it." *United States v. Hawkins*, 554 F. Supp. 2d 675, 680 (N.D. Tex. 2008). "[S]ubsequent statements and conduct, although relevant to whether the right to counsel, having been invoked, was later waived, are not to be considered." *Id.*

### III.

### ANALYSIS

Defendant identifies six or seven statements by which he claims he invoked his right to counsel. The Court finds that Mr. Oehlschlager's third statement—occurring at or around 30:56 on the interview recording—was an unambiguous request for counsel and that Mr. Oehlschlager did not waive the invocation of this right. Officers did not honor Mr. Oehlschlager's invocation of the

right to counsel but continued to question him without his lawyer present. Therefore, the Court **ORDERS** that all of Defendant's statements after 30:56 on the interview recording be suppressed.

### 1. The First Statement (12:09–17:09)

The Court finds that Mr. Oehlschlager did not unambiguously invoke his right to counsel by his first statement, "*I just think I would like to answer your questions with the advice of an attorney. I think that would be wise on my part.*" *See* Interview Recording at 12:09. This statement occurred about ten minutes after Mr. Oehlschlager had been administered his *Miranda* rights. Mr. Oehlschlager asserts that his use of the words "I just think" did not indicate equivocation but was normal social vernacular language being used by a defendant who had limited experience with the criminal justice system. The Government claims and SA Page testified that he interpreted the words "I just think" as indicating that Mr. Oehlschlager was still making up his mind about whether to invoke his right or continue speaking with the agents.

Other courts have held that the statement, "I think I need an attorney," depending on its context, may not be an unequivocal request for counsel. *United States v. Parks*, 2019 WL 2931460, at *4 (D. Md. July 8, 2019), *aff'd*, 849 F. App'x 400 (4th Cir. 2021) ("Yeah, I think I need an attorney"); *United States v. Hedrick*, 2011 WL 1103163, at *7 (E.D. Mo. Mar. 7, 2011), *report & recommendation adopted*, 2011 WL 1085359 (E.D. Mo. Mar. 23, 2011) ("I think I need an attorney now"). At this stage in the interview and based on the Court's review of the interview video, the Court finds that Mr. Oehlschlager did not unequivocally invoke his right by this statement. *Cf. Hawkins*, 554 F. Supp. 2d at 681 (considering a defendant's statement in light of his demeanor and intonation as seen by the court on the interview recording).

However, even if Mr. Oehlschlager's first statement was a clear and unequivocal invocation

of his right to counsel, he waived that invocation. *See Hawkins*, 554 F. Supp. 2d at 681. SA Page followed Mr. Oehlschlager's statement with the statement and question, "I know you said that's the way you're thinking of going. Is there a question or two that I can answer for you that'll maybe help you make a determination [about whether to continue the interview]?" *See* Interview Recording at 12:09–17:09. In response to SA Page's question, Mr. Oehlschlager asked whether he could still speak to agents "if I ask for the advice of an attorney." *Id.* After the agent answered, Mr. Oehlschlager said, "Yeah. I'd like to talk, too." *Id.* This is similar to an exchange another court in this District has previously found constituted a waiver. *See Hawkins*, 554 F. Supp. 2d at 681.

In *Hawkins*, a defendant in police custody was read his *Miranda* rights and signed a card stating that he understood them. *Id.* at 678. The defendant was then introduced to government agents and the following exchange occurred:

> Hawkins: Could I get my lawyer to come now or [inaudible]?
>
> Agent [1]: Yeah, you can. I mean, it's up to you. You can give us your side of the story, or once you get your attorney, then . . .
>
> Hawkins: [nodding] Okay, let's go ahead with you.
>
> Agent [1]: 'Cause what happens is this. I'm going to explain it to you. Once your attorney gets here and starts talking, the flow of the conversation is not going to be the same, he's probably only going to let you answer certain questions. I can't force you to answer any questions . . .
>
> Hawkins: What's the advantage for me though?
>
> Agent [1]: Well the advantage for you is that you show that you are cooperating from the beginning, as opposed to not cooperating and, you know, threatening to go to trial and stuff.
>
> Hawkins: Okay.
>
> Agent [1]: I always tell people this. We have evidence against you, that you, you

> know, committed certain crimes. It's best for you to give you your opportunity now right after this deal to tell me, you know, your side of the story. There's no question that I . . . that you have to answer. Right?
>
> Hawkins: Okay.
>
> Agent [1]: I can ask you a question, and if you don't want to answer it, just say you don't want to answer it and move on. I can ask you a series of questions and you answer the ones you want and you feel comfortable with.

*Id.* at 678–79 (alterations in original). Afterwards, "Hawkins continued the exchange by asking [Agent 2] about the crimes with which he had been charged, and he spoke to the officers for more than one hour." *Id.* at 679.

Here, as in *Hawkins*, after Mr. Oehlschlager made his first statement, SA Page asked a question: "I know you said that's the way you're thinking of going. Is there a question or two that I can answer for you that'll help make a determination one way or another?" Interview Recording at 12:09–17:09. Mr. Oehlschlager then responded: "Well, if I ask for the advice of an attorney . . . If I got an attorney would we then be able to sit down and talk? Or, is it that, uh, we don't get to talk?" *Id.* The question beginning "if I ask for the advice of an attorney" indicates that Mr. Oehlschlager had not yet made up his mind to do so. Further, Mr. Oehlschlager concluded this exchange with the statement, "Yeah, I'd like to talk, too," indicating he wanted to continue talking without an attorney present. *Id.*; *cf. Hawkins*, 554 F. Supp. 2d at 681. Additionally, testimony reflects that Mr. Oehlschlager has a college degree and indicated that he understood the *Miranda* warnings, and no evidence suggests that he is incapable of knowingly, intelligently, and voluntarily waiving his *Miranda* rights. Therefore, under these circumstances and by these statements following his first purported invocation, Mr. Oehlschlager waived any invocation of his Fifth Amendment right to counsel. *See Edwards*, 451 U.S. at 482.

### 2. The Second Statement (22:15)

Similarly, the Court finds that Mr. Oehlschlager's second statement, *"See, I think I need an attorney at this point. Because that's not my vehicle,"* was not an unambiguous invocation of his right to counsel. *Id.* at 22:15. This statement is much like the prior one, again using the word "I think," which SA Page testified that he believed indicated a continuing thought process rather than a settled intent. At this point in the interview and considering Mr. Oehlschlager's tone and demeanor as shown on the interview recording, the Court agrees with the Government that Mr. Oehlschlager was still apparently making up his mind about whether to continue the interview without an attorney present. *See Parks*, 2019 WL 2931460, at *4; *Hedrick*, 2011 WL 1103163, at *7. Alternatively, even if this statement was a clear and unequivocal invocation of counsel, the Court finds that Mr. Oehlschlager waived that invocation by asking to see the photos SA Page had shown him earlier and then re-engaging in conversation about those photos. Interview Recording at 23:00; *cf. Hawkins*, 554 F. Supp. 2d at 681. By this request, Mr. Oehlschlager knowingly and voluntarily waived his invocation of the *Miranda* right to counsel by reinitiating the conversation. *See Edwards*, 451 U.S. at 482.

### 3. The Third Statement (30:56–31:36)

By contrast, the Court finds that Mr. Oehlschlager's third statement, *"I think I need the advice of an attorney,"* taken in context, was an unambiguous invocation of the right to counsel that was not waived. *See* Interview Recording at 30:56–31:36. While this statement—like the two before it—includes the words "I think," when Mr. Oehlschlager's body language and intonation are considered, and in light of his prior statements, the third statement indicates that he was no longer considering his options but had decided to invoke his right to counsel. *See Hawkins*, 554 F. Supp. 2d

at 681. Though SA Page testified that he believed Mr. Oehlschlager's repeated statements showed that he was continuing to consider whether to invoke his right, "the inquiry under *Davis* is an objective one, and [SA Page's] perception of [Mr. Oehlschlager's] intent is irrelevant." *Soffar v. Cockrell*, 300 F.3d 588, 595 n.7 (5th Cir. 2002) (citing *Davis*, 512 U.S. at 459). Objectively, as the interview progressed and Mr. Oehlschlager continued to ask for an attorney, it became clear and unambiguous that Mr. Oehlschlager knew what he wanted—the advice of counsel. Though his words remained largely the same, their context and their effect on the constitutionality of the subsequent interrogation did not.

Further, after making this statement, Mr. Oehlschlager largely sat in silence and did not generally engage with SA Page's questions. Interview Recording at 31:36–35:00. The fact that Mr. Oehlschlager occasionally responded to sustained and skillful interrogation does not suggest that he willingly waived his *Miranda* right to counsel, once invoked. *See Edwards*, 451 U.S. at 484 ("[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.").

## IV.
## CONCLUSION

In sum, Mr. Oehlschlager clearly and unambiguously invoked his right to counsel by his third request for counsel, occurring at or around 30:56 on the interview recording. Questioning continued after that invocation in violation of the principle established in *Miranda* and *Edwards*. The Court finds no waiver of the *Miranda* right to counsel after the third statement. Accordingly, the Court **ORDERS** that Mr. Oehlschlager's statements after 30:56 of the interview recording are suppressed.

Because the Court has found that Mr. Oehlschlager's third statement was an unambiguous invocation of the right to counsel, it does not analyze his later statements.

**SO ORDERED.**

**SIGNED: May 11, 2022.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE